**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **H.S.,** | : | **No.3:17cv1839** |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| **v.** | : | |
| | : | |
| **STROUDSBURG AREA SCHOOL** | : | |
| **DISTRICT and BRANDON W.** | : | |
| **FLATLEY,** | : | |
| **Defendants** | : | |

••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••

## <u>MEMORANDUM</u>

This matter arises from plaintiff's claims that Defendant Brandon W. Flatley sexually assaulted the plaintiff while she was a minor enrolled in the Stroudsburg Area School District. Before the court for disposition are two motions to dismiss filed by Defendant Stroudsburg Area School District and Defendant Brandon W. Flatley. Having been fully briefed, the motions are ripe for disposition.

**Background**

Plaintiff H.S. was a student at Chipperfield Elementary School during the 2007 school year, when she first met Defendant Brandon Flatley. (Doc. 13, Am. Compl. ¶ 17).  Chipperfield Elementary School is part of the Stroudsburg Area School District. (<u>Id.</u>)  Stroudsburg Area School District (hereinafter "SASD") employed Defendant Brandon Flatley as a full-time music teacher and junior high

school orchestra director. (Id. ¶ 18). Defendant Flatley maintained his classroom and office at Chipperfield Elementary. (Id. ¶ 19).

In 2013, six years after first meeting the minor plaintiff and when plaintiff was a sixteen-year-old high school student at Stroudsburg Area High School, Defendant Flatley began a relationship with the plaintiff. (Id. ¶ 20). From April of 2013 through December of 2014, Defendant Flatley and the plaintiff exchanged thousands of text messages which were sexual in nature, communicated via FaceTime while performing sexual acts, and engaged in physical sexual contact. (Id. ¶¶ 22, 28, 29).

During this time period, the plaintiff swam on the Stroudsburg Area High School swim team. (Id. ¶ 31). The team held practices at Chipperfield Elementary, where the plaintiff would meet Defendant Flatley. (Id.) SASD permitted students on the high school swim team to wait inside Chipperfield Elementary unsupervised for a period of time before swim practices began. (Id. ¶ 32). The plaintiff spent her time in Defendant Flatley's classroom, and watched Defendant Flatley teach his final class of the day. (Id. ¶ 33). The plaintiff frequently and repeatedly arrived late for swim practice, which she alleges was due to the time spent with Defendant Flatley. (Id. ¶ 38).

The sexual contact between the two, which involved digital and oral penetration, took place on several occasions at Chipperfield Elementary School,

often during school hours and activities. (Id. ¶ 29).  On at least two occasions, Defendant Flatley engaged in sexual intercourse with the plaintiff at her house while plaintiff's parents were at work. (Id. ¶¶ 43, 44).

The relationship between plaintiff and Defendant Flatley ended on December 23, 2014, when plaintiff's mother discovered messages that Defendant Flatley had sent to the plaintiff. (Id. ¶ 45).  Plaintiff's mother notified the SASD superintendent, who in turn notified the police. (Id.)  SASD thereafter terminated Defendant Flatley's employment, and he was prosecuted criminally for his conduct. (Id. ¶ 51).  He is currently serving a state prison sentence. (Id.)  Following Defendant Flatley's arrest and suspension from SASD, the plaintiff was shunned by students and their families, and was subjected to name calling and social rejection. (Id. ¶ 54).

The plaintiff alleges that at the time these events took place, SASD did not have a policy that prohibited its teachers from engaging in any of the following activities: fraternizing with students on and off of school property; using social media to communicate with students on a private basis; visiting with students during school hours; or meeting with students privately behind closed and/or locked doors. (Id. ¶ 46).

Based on these facts, plaintiff filed a complaint on October 6, 2017, against SASD and Brandon Flatley. Plaintiff filed an amended complaint on November 9,

2017. The amended complaint alleges the following causes of action: Count One – Violation of Title IX of the Education Amendments of 1972 against SASD; Count Two – Fourteenth Amendment Violation of Personal Security and Bodily Integrity and Sexual Harassment against Defendant Flatley; Count Three – Municipality Liability pursuant to 42 U.S.C. § 1983 against SASD; Count Four – Municipality Liability/Failure to Train/Supervise pursuant to 42 U.S.C. § 1983 against SASD; and, Count Five – Assault, Battery and Intentional Infliction of Emotional Distress against Defendant Flatley.

On November 11, 2017, Defendant SASD filed a motion to dismiss plaintiff's amended complaint. (Doc. 16). On January 25, 2018, Defendant Flatley, who is proceeding *pro se*, filed preliminary objections to plaintiff's amended complaint. (Doc. 24). We issued an order on January 29, 2018, liberally construing Defendant Flatley's objections as a motion to dismiss. (Doc. 25). Plaintiff thereafter filed her briefs in opposition to both of these motions, (Docs. 21, 28), bringing this case to its present posture.

**Jurisdiction**

Because this case is brought pursuant to the Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a) et seq., as well as 42 U.S.C. § 1983, the court has jurisdiction pursuant to 28 U.S.C. § 1331. ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or

4

treaties of the United States."). The court has supplemental jurisdiction over plaintiff's state-law claim pursuant to 28 U.S.C. § 1367(a). ("In any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.").

**Legal Standard**

The defendant filed its motion to dismiss plaintiff's amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The court tests the sufficiency of the complaint's allegations when considering a Rule 12(b)(6) motion. All well-pleaded allegations of the complaint must be viewed as true and in the light most favorable to the non-movant to determine whether, " 'under any reasonable reading of the pleadings, the plaintiff may be entitled to relief.' " Colburn v. Upper Darby Twp., 838 F.2d 663, 665–66 (3d Cir. 1988) (quoting Estate of Bailey by Oare v. Cnty. of York, 768 F.2d 503, 506 (3d Cir. 1985)). The plaintiff must describe " 'enough facts to raise a reasonable expectation that discovery will reveal evidence of' [each] necessary element" of the claims alleged in the complaint. Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)). Moreover, the plaintiff must allege facts that "justify moving the case beyond the pleadings to

the next stage of litigation." Id. at 234–35. In evaluating the sufficiency of a complaint the court may also consider "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n. 2 (3d Cir. 1994) (citations omitted). The court does not have to accept legal conclusions or unwarranted factual inferences. See Curay–Cramer v. Ursuline Acad. of Wilmington, Del., Inc., 450 F.3d 130, 133 (3d Cir. 2006) (citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997)).

The federal rules require only that plaintiff provide "a short and plain statement of the claim establishing that the pleader is entitled to relief," a standard which "does not require detailed factual allegations," but a plaintiff must make "a showing, rather than a blanket assertion, of entitlement to relief that rises above the speculative level." McTernan v. N.Y.C., 564 F.3d 636, 646 (3d Cir. 2009) (citations and internal quotations and quotation marks omitted).

**Discussion**

As noted above, both Defendant SASD and Defendant Flatley have filed motions to dismiss. We will begin with Defendant SASD's motion.

**I. Defendant SASD's Motion to Dismiss**

Defendant SASD has filed its motion to dismiss Counts I, III, and IV of plaintiff's amended complaint pursuant to Federal Rule of Civil Procedure

6

12(b)(6). Defendant SASD argues that all claims arising under Title IX should be dismissed because the plaintiff failed to plead the requisite elements of a Title IX claim. Defendant SASD further argues that all claims arising under 42 U.S.C. § 1983, alleging municipality liability, should be dismissed because the plaintiff failed to plead any averments to support a prima facie case. We will address these arguments in turn.

### A. Count I - Title IX Claim

Count I of plaintiff's amended complaint asserts a claim on behalf of the plaintiff pursuant to Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 et seq., (hereinafter "Title IX") based upon sexual harassment. In pertinent part, Title IX provides that "[n]o person ... shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). "Title IX encompasses sexual harassment of a student by a teacher and is enforceable through an implied private right of action for damages against a school district." Bostic v. Smyrna Sch. Dist., 418 F.3d 355, 359 (3d Cir. 2005).

The Supreme Court has held that Title IX damages cannot be recovered "for the sexual harassment of a student by one of the district's teachers ... unless an official of the school district who at a minimum has authority to institute

corrective measures on the district's behalf has actual notice of, and is deliberately indifferent to, the teacher's misconduct." Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274, 277 (1998). Recovery based on principles of respondeat superior or constructive notice in cases of teacher-student sexual harassment is at odds with Congress' basic objective of Title IX, as "liability would attach even though the district had no actual knowledge of the teachers conduct and no opportunity to take action to end the harassment. (Id. at 275). Here, Defendant SASD argues that the plaintiff has failed to plead the requisite elements of actual notice to an appropriate person, followed by deliberate indifference. We agree with Defendant SASD.

After a careful review, we find that the amended complaint lacks factual allegations to support that school officials were aware and deliberately indifferent to Defendant Flatley's inappropriate sexual conduct with the plaintiff. While plaintiff alleges that "teachers, supervisors, coaches and school security personnel knew that [plaintiff] was visiting Flatley in his classroom," plaintiff does not allege that they were aware of the relationship between the two. (Doc. 13, Am. Compl. ¶ 34). Plaintiff appears to be making a constructive notice argument, however, as we noted above, constructive notice is not enough to recover under Title IX.

In plaintiff's single factual allegation relating to actual notice, the plaintiff alleges that on December 23, 2014, the plaintiff's mother discovered inappropriate messages that Defendant Flatley had been sending to the plaintiff. (Id. ¶ 45). Plaintiff's mother immediately notified the school superintendent "who in turn notified the police." (Id.)  Plaintiff further indicates that Defendant SASD terminated Defendant Flatley's employment. (Id. ¶ 51). Plaintiff has presented no factual allegations to support that Defendant SASD, or an appropriate official of SASD, knew of Defendant Flatley's inappropriate conduct prior to December 23, 2014. As such, plaintiff's Title IX of the Education Amendments of 1972 claim against Defendant SASD will be dismissed.

## B. Count III and Count IV -  42 U.S.C. § 1983 Claims

The next issue raised by the defendant pertains to SASD as a defendant in the section 1983 civil rights claims raised in Counts III and IV of plaintiff's amended complaint. As explained more fully below, for a municipal entity, such as a school district, to be liable on a civil rights claim, the violation of the plaintiff's civil rights must have been caused by a policy or custom of that municipal entity. The defendant argues that plaintiff has failed to establish that Defendant SASD, as a municipal entity, was deliberately indifferent to plaintiff's constitutional rights, therefore Counts III and IV should be dismissed. We agree with the defendant.

To establish a claim under section 1983, two criteria must be met. First, the conduct complained of must have been committed by a person acting under color of state law. Second, the conduct must deprive the complainant of rights secured under the Constitution or federal law. Sameric Corp. of Del., Inc. v. City of Phila., 142 F.3d 582, 590 (3d Cir. 1998). Section 1983 does not, by its own terms, create substantive rights. Rather, it provides only remedies for deprivations of rights established elsewhere in the Constitution or federal laws. Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir.1996).

In the instant case, the plaintiff asserts that the defendants violated her Fourteenth Amendment rights. Specifically, plaintiff contends that she had the right, as a minor and public-school student, to personal security and bodily integrity. Under the Due Process Clause of the Fourteenth Amendment, the plaintiff argues that she had the right to be free from invasion of her personal security and sexual harassment at the hands of public school employees. The state actor defendant who is alleged to have directly violated the plaintiff's rights is Defendant Flatley, a teacher within plaintiff's school district.

Plaintiff seeks to hold the school responsible for the civil rights violation committed by its employee. Municipal employers, such as school districts, however, cannot be held vicariously liable for the constitutional violations committed by their employees. Monell v. NYC Dep't of Soc. Servs., 436 U.S. 658,

694 (1978). Municipal liability only attaches when a plaintiff demonstrates that an official policy or custom caused the asserted constitutional deprivation. Watson v. Abington Twp., 478 F.3d 144, 155 (3d Cir. 2007).

A policy may be established several different ways. Plaintiff indicates that in Count III of her amended complaint, she seeks to establish a claim based on the policies in place at SASD which did not prohibit fraternization between students and teachers, the use of social media between teachers and students, nor visitation by high school students to the elementary school during school hours. In Count IV, plaintiff seeks to establish a municipal policy based on SASD's failure to train, supervise, control, and/or discipline Defendant Flatley.

### 1. Count III – SASD's policies

In Count III, plaintiff claims that at all times relevant to the complaint, Defendant Flatley was acting, pursuant to either official policy or the practice, custom, and usage of the SASD and its school board, which did not prohibit: fraternization between students and professional staff; using social media to befriend and to communicate with students on a private basis; or, intermediate school teachers visiting with high school students in private offices behind closed and locked doors.

Once a plaintiff identifies the "policy" at issue, as she has here, she must demonstrate causation, that is, that the municipality, through its policy, was the

"'moving force' behind the injury." Berg v. Cnty. of Allegheny, 219 F.3d 261, 276 (3d Cir. 2000) (quoting Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 404 (1997)). Where the policy does not facially violate the Constitution, causation is established by demonstrating deliberate indifference to the policy's known or obvious consequences. Id. "A showing of simple or even heightened negligence will not suffice." Id. Essentially, a plaintiff must demonstrate that "policymakers were aware of similar unlawful conduct in the past, but failed to take precautions against future violations, and that this failure, at least in part, led to [the] injury." Turner v. City of Phila., 22 F.Supp. 2d 434, 437 (E.D. Pa. 1998) (quoting Bielevicz v. Dubinon, 915 F.2d 845, 851 (3d Cir. 1990)).

At the motion to dismiss stage, a plaintiff must allege facts to support her claim that a municipal decision maker had knowledge of and exhibited deliberate indifference in the face of a known threat or high likelihood of injury to the plaintiff, as required to establish municipal liability under a policy or custom theory. See Johnson v. Elk Lake Sch. Dist., 283 F.3d 138, 144 (3d Cir. 2002) (finding that absent a showing that "school officials knew of the alleged risk of sexual abuse posed by [Defendant abuser] at a time at which they could have prevented [the student's] alleged injuries," a plaintiff cannot establish "that her injuries were caused by a policy or custom of the Administration").

Although here the plaintiff has alleged that "teachers, supervisors, coaches and school security personnel knew that H.S. was visiting Flatley in his classroom during Chipperfield school hours," the complaint does not adequately allege knowledge of the sexual relationship between the plaintiff and Defendant Flatley prior to December of 2014, when plaintiff's mother contacted the school superintendent. Plaintiff alleges no history of such conduct within SASD, nor any reason for SASD decision makers to believe that their policy would violate students' constitutional rights.

Thus, because the plaintiff has not alleged that decision maker was deliberately indifferent to a known likelihood that Defendant Flatley would violate plaintiff's constitutional rights, and that this indifference caused the violation, Plaintiffs' Count III claim will be dismissed without prejudice to the extent it rests on a policy and custom theory.

### 2. Count IV- Failure to Train

Next, in Count IV of her complaint, plaintiff seeks to establish a municipal policy under a "failure to train" theory. Plaintiff argues that Defendant SASD failed to adequately instruct, train, supervise, control, and/or discipline Defendant Flatley. Failure to adequately screen or train municipal employees can ordinarily be considered deliberate indifference only where the failure has caused a pattern of violations." Id. (citing City of Canton, Ohio v. Harris, 489 U.S. 378, 389 (1989)).

If no pattern of violations exists, the plaintiff bears a high burden to establish deliberate indifference. He must demonstrate that the violation of federal rights was a highly predictable consequence of the municipality's failure to train its employees regarding how to handle recurring situations. Id. The fact that a situation is likely to recur and the predictability that a municipal employee will violate federal rights without adequate training can reflect deliberate indifference. Id.

The Third Circuit Court of Appeals has further described failure to train municipal liability as follows: "a failure to train, discipline or control can only form the basis for section 1983 municipal liability if the plaintiff can show both contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents and circumstances under the supervisor's actions or inaction could be found to have communicated a message of approval to the offending subordinate." Montgomery v. De Simone, 159 F.3d 120, 127 (3d Cir. 1998).

As we discussed above, plaintiff's amended complaint lacks factual allegations to support that SASD officials were aware of Defendant Flatley's inappropriate sexual contact with the plaintiff. Once plaintiff's mother notified the school superintendent of the relationship, the superintendent contacted the police. Defendant SASD then terminated Defendant Flatley's employment.

Plaintiff has also presented no factual allegations supporting a pattern of violations or similar instances.

Accordingly, we find that plaintiff has failed to make sufficient allegations to support causation based upon a failure to train policy. Thus, we find that plaintiff's amended complaint insufficiently alleges municipal liability against SASD to overcome defendants' motion to dismiss. The portion of the motion to dismiss attacking municipal liability will thus be granted in favor of the defendant on Count IV.

### C. Leave to Amend

As all counts against Defendant SASD will be dismissed, Defendant SASD argues that the plaintiff should not be permitted to further amend her complaint. We disagree. Federal Rule of Civil Procedure 15(a) permits a party to amend a pleading once as a matter of course, or at any other time with the opposing party's written consent or the court's leave. "In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc. –the leave should, as the rules require, be 'freely given.' " Foman v. Davis, 371 U.S. 178, 182 (1962).

Accordingly, Defendant SASD's motion to dismiss Counts I, III, and IV will be granted without prejudice for plaintiff to refile a second amended complaint.

## II. Defendant Flatley's Motion to Dismiss

On January 25, 2018, Defendant Flatley filed objections to plaintiff's amended complaint. (Doc. 24). Because Defendant Flatley is a *pro se* litigant, we construed these objections as a motion to dismiss. We ordered Defendant Flatley to file a memorandum in support of his motion dismiss. (Doc. 25). On February 26, 2018, Defendant Flatley filed his memorandum in support of his motion to dismiss. The defendant raises separate and distinct arguments in his motion to dismiss and his brief in support. Again, because Defendant Flatley is a *pro se* litigant, we construe his motion and brief in support liberally, and will address all arguments raised.

First, Defendant Flatley argues that plaintiff's amended complaint should be dismissed for lack of subject-matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), and improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3). As we have already addressed, this court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, which provides district courts with original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States. We have supplemental jurisdiction over plaintiff's state-law claim pursuant to 28 U.S.C. § 1367(a). Further, we find that venue is

appropriate in the Middle District of Pennsylvania. A civil action may be brought "in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." See 28 U.S.C. § 1391(b). The sexual abuse of the plaintiff occurred in the Stroudsburg Area School District, which falls within the confines of the Middle District of Pennsylvania. As such, defendant's motion to dismiss on Federal Rules of Civil Procedure 12(b)(1) and 12(b)(3) will be denied.

Next, Defendant Flatley moves to dismiss plaintiff's amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, Federal Rule of Civil Procedure 12(b)(4) for insufficient process, and Federal Rule of Civil Procedure 12(b)(5) for improper service. Serving a summons establishes personal jurisdiction over a defendant who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located. FED. R. CIV. P. 4(K)(1)(A). A summons must be served with a copy of the complaint by a person who is at least 18 years old and not a party to the action. FED. R. CIV. P. 4(C). Here, Constable Nedd served the defendant with a summons and copy of the amended complaint at State Correctional Institution – Benner Township on November 20, 2017. (Doc. 20, Proof of Service). Thus, the defendant was properly served, and the court has personal jurisdiction over the defendant. We will deny the defendant's motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(4), and 12(b)(5).

Finally, the defendant moves to dismiss Count II and Count V of plaintiff's amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] Defendant Flatley argues that Counts II and V fail to state claims upon which relief may be granted. He does not, however, explain how or why these counts fail. Nevertheless, we will review the appropriate standard for these claims.

## A. Count II – Violation of Personal Security and Bodily Integrity

Count II of plaintiff's amended complaint alleges that as a direct and proximate result of Defendant Flatley's actions, plaintiff was deprived of her constitutional rights, and thereafter suffered physical and emotional harm. Plaintiff alleges that pursuant to the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution, plaintiff had the right to personal security and personal bodily integrity.

The Fourteenth Amendment protects individuals from arbitrary government interference with certain protected liberty interests, one of which is an individual's interest in bodily integrity. The right to be free from physical abuse or unwanted medical treatment by government officials is among the fundamental liberty interests protected by the Fourteenth Amendment. See Black v. Indiana Area Sch. Dist., 985 F.2d 707, 709 n. 1 (3d Cir.1993) ("Plaintiffs have a liberty interest

[1] Defendant Flatley also moves to dismiss Counts I, III, and IV of plaintiff's amended complaint. Defendant Flatley, however, is not a party to these counts and therefore does not have standing to move for their dismissal. As such, we will not address these counts as they pertain to Defendant Flatley.

in their bodily integrity that is protected by the Fourteenth Amendment.") (citing Youngberg v. Romeo, 457 U.S. 307, 315 (1982).

Here, plaintiff alleges that Defendant Flatley made a series of sexual advances toward the plaintiff, "exerting psychological coercion to overcome her will and engage her in a sexual relationship." (Doc. 13, Compl. ¶ 72).  At all relevant times, Defendant Flatley was an employee of the public school district. (Id. ¶ 9). Plaintiff's allegations raise the plausible inference that the defendant used his authority as a teacher to coerce her into sexual acts. Thus, we find that the plaintiff has adequately alleged a Fourteenth Amendment injury under color of state law as to Defendant Flatley.

### B. Count V – Common Law Assault

In Count V of her amended complaint, the plaintiff sets forth a claim for assault against Defendant Flatley. Defendant Flatley argues that the plaintiff's complaint fails with respect to this claim.

An individual commits assault when he or she acts to cause an actual battery or to place another person in "imminent apprehension" of a battery, thereby causing the person to be "put in such imminent apprehension." Jackson v. Pennsylvania Board of Probation & Parole, 885 A.2d 598, 601 n. 2 (Pa. Commw. Ct. 2005) (quoting the RESTATEMENT (SECOND) OF TORTS § 21 (1965)). Under Pennsylvania law, an individual commits a battery when he or she

intentionally causes a harmful or offensive contact with another person's body. Cooper v. Lankenau Hosp., 51 A.3d 183, 191–92 (Pa. 2012). Thus, an attempted battery constitutes an assault. See RESTATEMENT (SECOND) TORTS § 21(1)(A) (stating that an assault occurs where one acts with the intent to cause a harmful or offensive contact with the person of another, and where the other is thereby put in imminent apprehension of such attempted contact); see also Renk v. City of Pittsburgh, 537 Pa. 68, 641 A.2d 289, 294–5 (Pa.1994) (quoting § 21 of THE RESTATEMENT (SECOND) OF TORTS).

Here, the plaintiff, a minor student, has alleged that Defendant Flatley, a teacher and an individual in a position of authority over her, engaged in various sexual acts with her over the course of several months. We find that such sexual contact can fit within the meaning of offensive contact. Taking the plaintiff's allegations as true, as we must do at this stage, it is clear that the defendant intended to have sexual relations with the plaintiff, by virtue of his actually doing so. Defendant's motion to dismiss plaintiff's claim for assault will be denied.

### C. Count V – Common Law Battery

Next, Defendant Flatley argues that the plaintiff's battery claim in Count V must be dismissed. As discussed above, the sexual relations Defendant Flatley had with the plaintiff can be considered offensive contact, and it can reasonably be inferred that Defendant Flatley intended to have a sexual relationship with the

plaintiff by virtue of his actually doing so. Therefore, at this stage of the proceedings, Defendant Flatley's motion to dismiss the plaintiff's battery claim will be denied.

### D. Count V - Intentional Infliction of Emotional Distress

Finally, Defendant Flatley moves to dismiss plaintiff's claim for Intentional Infliction of Emotional Distress (hereinafter "IIED"), which is also in Count V of plaintiff's amended complaint, based upon plaintiff's failure to state a claim.

In order to establish a claim for IIED under Pennsylvania law, four elements must be met: (1) extreme and outrageous conduct, (2) which is intentional or reckless, (3) it must cause emotional distress, and (4) that distress must be severe. See Hoy v. Angelone, 691 A.2d 476, 482 (Pa. Super. Ct. 1997). The Pennsylvania Superior Court has held that for conduct to be outrageous it must be such that "the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous'." Strickland v. Univ. of Scranton, 700 A.2d 979, 987 (Pa. Super. Ct.1997) (quoting Small v. Juniata College, 682 A.2d 350, 355 (Pa. Super. Ct. 1996).

Plaintiff alleges that Defendant Flatley, a teacher within her school district, formed a relationship with her while she was a minor, and engaged in sexual activities with her over an extended period of time both on and off school

property, during and after school hours. It is reasonable that a community could certainly find this behavior to be outrageous. As for the remaining elements, the plaintiff alleges that the outrageous behavior was an assault, sexual in nature, which is an intentional act. She also alleges in her amended complaint that she suffered severe emotional distress. At this stage in the litigation, we find that the plaintiff has successfully pled a cause of action for IIED and, therefore, defendant Flatley's motion to dismiss will be denied.

**Conclusion**

For the foregoing reasons, Defendant SASD's motion to dismiss will be granted. All of the claims against Defendant SASD, which are Counts I, III, and IV, will be dismissed without prejudice. Defendant Flatley's preliminary objections, which we construed as a motion to dismiss, will be denied. An appropriate order follows.

**BY THE COURT:**

Date: <u>**September 24, 2018**</u>      <u>**s/ James M. Munley**</u>
                                             **JUDGE JAMES M. MUNLEY**
                                             **United States District Judge**