IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| H.S., | : | No. 3:17cv1839 |
|     **Plaintiff** | : | |
| | : | (Judge Munley) |
|     v. | : | |
| | : | |
| **STROUDSBURG AREA SCHOOL,** | : | |
| **DISTRICT and BRANDON W.** | : | |
| **FLATLEY,** | : | |
|     **Defendants** | : | |

## MEMORANDUM

This matter arises from the plaintiff's claims that Defendant Brandon W. Flatley sexually assaulted the plaintiff while she was a minor enrolled in the Stroudsburg Area School District. Before the court for disposition is a motion to dismiss filed by Defendant Stroudsburg Area School District. Having been fully briefed, the motion is ripe for disposition.

**Background**[1]

Plaintiff H.S. was a student at Chipperfield Elementary School during the 2007 school year when she first met Defendant Brandon Flatley (Doc. 32, Am. Compl. ¶ 17). Chipperfield Elementary School is part of the Stroudsburg Area

---

[1] These brief background facts are derived from the plaintiff's second amended complaint. At this stage of the proceedings, we must accept all factual allegations in the second amended complaint as true. Phillips v. Cty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008). We make no determination, however, as to the ultimate veracity of these assertions.

School District.  (Id.)  Stroudsburg Area School District (hereinafter "SASD") employed Defendant Brandon Flatley as a full-time music teacher and junior high school orchestra director.  (Id. ¶ 18).  Defendant Flatley maintained his classroom and office at Chipperfield Elementary.  (Id. ¶ 19).

In 2013, six years after first meeting the minor plaintiff and when the plaintiff was a sixteen-year old high school student at Stroudsburg Area High School, Defendant Flatley began a relationship with the plaintiff.  (Id. ¶ 23).  From April of 2013 through December of 2014, Defendant Flatley and the plaintiff exchanged thousands of text messages that were sexual in nature, communicated via FaceTime while performing sexual acts, and engaged in physical sexual contact.  (Id. ¶¶ 22-28).

During this time period, the plaintiff swam on the Stroudsburg Area High School swim team.  (Id. ¶ 35).  The team held practices at Chipperfield Elementary, where the plaintiff would meet Defendant Flatley.  (Id. ¶ 37).  SASD permitted students on the high school swim team to wait inside Chipperfield Elementary unsupervised for a period of time before swim practices began.  (Id. ¶ 36).  The plaintiff spent her time in Defendant Flatley's classroom, and watched Defendant Flatley teach his final class of the day.  (Id. ¶ 37).  The plaintiff frequently and repeatedly arrived late for swim practice, which she alleges was due to the time spent with Defendant Flatley.  (Id. ¶ 42).

2

The sexual contact between the two, which involved digital and oral penetration, took place on several occasions at Chipperfield Elementary School, often during school hours and activities. (Id. ¶¶ 44-46). On at least two occasions, Defendant Flatley engaged in sexual intercourse with the plaintiff at her house while plaintiff's parents were at work. (Id. ¶¶ 47-48).

The relationship between the plaintiff and Defendant Flatley ended on December 23, 2014, when the plaintiff's mother discovered text messages that Defendant Flatley had sent to the plaintiff. (Id. ¶ 49). After notifying the Superintendent, the plaintiff and her parents met with the Superintendent John Toleno. (Id. ¶ 50). Flatley was subsequently suspended and arrested. (Id. ¶¶ 53 & 55).

Although the plaintiff's parents made representations to Superintendent Toleno that they wanted the plaintiff's identity to be protected, monitored, and counseled to lessen any adverse psychological impact her relationship with Defendant Flatley would cause the plaintiff, the relationship was widely reported in the local broadcast and print media identifying Defendant Flatley as having been suspended and under active police investigation. (Id. ¶¶ 54). Due to the notoriety of the plaintiff visiting with Defendant Flatley in his classroom and office, and the attention and affection that Flatley showed the plaintiff, students and

teachers openly discussed that the plaintiff had to be the student with whom Defendant Flatley had been involved. (Id. ¶ 56).

Because of the plaintiff's frequent interactions with Defendant Flatley, both teachers and students questioned the plaintiff to find out whether she was "the one" that Defendant Flatley molested. (Id. ¶ 57). The questioning was hostile and accusatory insinuating that the plaintiff was responsible and "had victimized a fine teacher and family man." (Id. ¶ 58). Both faculty and staff openly discussed the plaintiff's involvement with Defendant Flatley with other staff and students. (Id. ¶ 59).

Defendant Flatley's arrest captivated the school community as a result of Defendant Flatley's popularity and continuing gossip by faculty, staff, students, and parents. (Id. ¶ 61). In reaction to Defendant Flatley's arrest, the plaintiff was shunned, and called, among other names, a "slut," and a "home wrecker." (Id.) After the arrest was reported in the Pocono Record, readers posted comments online specifically identifying the plaintiff as the student, increasing her notoriety and subsequent harassment at the school. (Id. ¶ 62). The open hostility towards the plaintiff not only caused her to stop riding the school bus, but it also caused her to eat lunch alone. (Id. ¶ 63).

Although the plaintiff's mother contacted the plaintiff's school principal to express concerns for her daughter's emotional state after Flatley's arrest, the

principal did nothing. (Id. ¶ 64). Despite Superintendent Toleno's assurance that the plaintiff would be monitored and counseled, Defendant SASD offered no counseling to the plaintiff and failed to direct staff to monitor and help the plaintiff deal with the fallout of the relationship or the environment Defendant Flatley's suspension and arrest had caused. (Id. ¶ 65). The District failed to proactively meet with the student body to quell their hostility towards the plaintiff. (Id. ¶ 66). The harassment and isolation that the plaintiff suffered lasted the remainder of her junior year and her entire senior year. The plaintiff was the only senior whose picture did not appear in the senior yearbook. (Id. ¶ 69)

The second amended complaint raises the following five causes of action: Count 1—Violation of Title IX of the Education Amendments of 1972 against SASD and sexual harassment under the Fourteenth Amendment; Count 2—Fourteenth Amendment Violation of Personal Security and Bodily Integrity and Sexual Harassment against Defendant Flatley; Count 3—Municipality Liability pursuant to 42 U.S.C. § 1983 against SASD; Count 4—Municipality Liability/Failure to Train/Supervise pursuant to 42 U.S.C. § 1983 against SASD; and, Count 5—Assault, Battery, and Intentional Infliction of Emotional Distress against Defendant Flatley.

On November 11, 2017, Defendant SASD filed a motion to dismiss the plaintiff's amended complaint. (Doc. 16). On January 25, 2018, Defendant

Flatley, who is proceeding pro se, filed preliminary objections to the plaintiff's amended complaint. (Doc. 24). We issued an order on January 29, 2018, liberally construing Defendant Flatley's objections as a motion to dismiss. (Doc. 25). On September 24, 2018, we granted Defendant SASD's motion to dismiss on all counts alleged against it, but we denied all Defendant Flatley's objections to all counts alleged against him. (Doc. 30).

The plaintiff filed her second amended complaint on October 13, 2018. (Doc. 32). Defendant SASD again filed a motion to dismiss Count 1, Count 3, and Count 4 of the plaintiff's claims.[2] (Doc. 37). The parties have briefed their respective positions, and the matter is ripe for disposition.

**Jurisdiction**

As this case is brought for violations of Title IX of the Education Amendments of 1972 and pursuant to 42 U.S.C. § 1983 for civil rights violations, we have jurisdiction under 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). We have supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

---

[2] Defendant Flatley failed to file a motion to dismiss in response to the plaintiff's second amended complaint. As a result, we do not address counts 2 and 5, which are alleged against Defendant Flatley. The claims we will address—counts 1, 3, and 4—are not alleged against Defendant Flatley.

**Legal Standard**

Defendants filed their motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The court tests the sufficiency of the complaint's allegations when considering a Rule 12(b)(6) motion. All well-pleaded allegations of the complaint must be viewed as true and in the light most favorable to the non-movant to determine whether, "'under any reasonable reading of the pleadings, the plaintiff may be entitled to relief.'" Colburn v. Upper Darby Twp., 838 F.2d 663, 665-66 (3d Cir. 1988) (quoting Estate of Bailey by Oare v. Cnty. of York, 768 F.2d 503, 506 (3d Cir. 1985)). The plaintiff must describe "'enough facts to raise a reasonable expectation that discovery will reveal evidence of' [each] necessary element" of the claims alleged in the complaint. Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)). Moreover, the plaintiff must allege facts that "justify moving the case beyond the pleadings to the next stage of litigation." Id. at 234-35. In evaluating the sufficiency of a complaint the court may also consider "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994) (citations omitted). The court does not have to accept legal conclusions or unwarranted factual inferences. See Curay-Cramer v. Ursuline Acad. of

Wilmington, Del., Inc., 450 F.3d 130, 133 (3d Cir. 2006) (citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997)).

**Discussion**

### Defendant SASD's Motion to Dismiss

Defendant SASD has moved to dismiss Counts 1, 3, and 4 of the plaintiff's second amended complaint pursuant to Federal Rule of Civil Procedure Rule 12 (b)(6). Defendant SASD argues that all claims arising under Title IX should be dismissed because the plaintiff failed to plead the requisite elements of a Title IX claim. Defendant SASD further argues that all claims arising under 42 U.S.C. § 1983, alleging municipality liability, should be dismissed because the plaintiff failed to plead any averments to support a prima facie case. We will address these arguments in turn.

#### a. Count 1—Title IX Claim

Defendant SASD moves to dismiss Count 1 of the plaintiff's complaint, which brings a hostile educational environment claim under Title IX, 20 U.S.C. § 1681 et seq., (hereinafter "Title IX") against Defendant SASD based upon sexual harassment. (Doc. 37, ¶ 17). In pertinent part, Title IX provides that "[n]o person . . . shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681 (a). "Title IX

encompasses sexual harassment of a student by a teacher and is enforceable through an implied private right of action for damages against a school district." Bostic v. Smyrna Sch. Dist., 418 F.3d 355, 359 (3d Cir. 2005).

To succeed on a Title IX sexual harassment claim, a student must show: (1) *quid pro quo* sexual harassment, or a sexually hostile educational environment; (2) actual notice by an "appropriate person" who has the authority to take corrective measures; and, (3) a response to the harassment that amounts to deliberate indifference. M.S. ex rel. Hall v. Susquehanna Twp. Sch. Dist., 43 F. Supp. 3d 412, 429 (M.D. Pa. 2014) (citing Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274, 291–92, (1998)). The definition of an "appropriate person" is someone "with the power to take action to correct the discrimination." Bostic, 418 F.3d at 360. The plaintiff is not alleging quid pro quo sexual harassment. Instead, the plaintiff alleges that she was subjected to a sexually hostile educational environment, which has elements of its own.

To prevail on a sexually hostile environment claim, a plaintiff must show that (1) she suffered intentional discrimination because of her sex, (2) the discrimination was pervasive and regular, (3) the discrimination detrimentally affected her, and (4) the discrimination would have detrimentally affected a reasonable person of her sex in her position. Davis v. Monroe Cnty. Bd. of Educ., 526 U.S. 629, 650 (1999).

Defendant SASD challenges the first and second elements of the plaintiff's Title IX claim. For the first element, Defendant SASD is challenging whether or not the plaintiff has sufficiently pled a sexually hostile environment. Specifically, Defendant SASD avers that the plaintiff has failed to show that the discrimination detrimentally affected the plaintiff, which is the third element of a sexually hostile environment claim. After carefully reviewing the plaintiff's second amended complaint, we disagree with the defendant.

The plaintiff alleges that after Defendant Flatley was arrested, students, faculty, and staff subjected the plaintiff to name calling, social rejection, shunning, and criticism that she was the cause of the sexual harassment. (Id. ¶ 79). As a result of this environment, the plaintiff alleges that she was prevented from riding the school bus and excluded from the senior yearbook, which are both educational activities. Because the plaintiff claims that she was precluded from participating in these activities, it is our view that the plaintiff has sufficiently pled that the sexual harassment detrimentally affected the plaintiff. As such, the plaintiff has sufficiently averred facts that the sexual harassment detrimentally affected her educational experience under a sexually hostile environment theory.

Next, Defendant SASD challenges the second element of the plaintiff's Title IX claim, averring that the plaintiff failed to claim that an appropriate party had

actual notice of any sexual harassment that may have occurred on campus. We disagree with the Defendant.

There is no doubt that Defendant SASD, as the home district of Stroudsburg Area High School, has the power to correct sexual discrimination that occurs at a school within its own district. The plaintiff pled that the superintendent—acting as the "eyes and ear" of Defendant SASD—has the responsibility of "running the District on a daily basis through authority delegated by the Board and Pennsylvania law." (Doc. 37 ¶ 7). In fact, in paragraph 67 of the complaint, the plaintiff explicitly states that SASD "had the power and authority to correct the harassment and hostility suffered by H.S." (Id. ¶ 67). The plaintiff has sufficiently pled that Defendant SASD is an appropriate party for purposes of Title IX.

With respect to actual notice, Defendant SASD argues that the plaintiff failed to plead that Defendant SASD had actual notice that the plaintiff was subjected to sexual harassment. We disagree with this assertion. The plaintiff clearly articulates in her pleading that she "was subjected to sexual harassment in the form of sexual contact from a teacher . . . which was open and notorious." (Id. ¶ 79). Because the plaintiff pled that the harassment was open and notorious, we can infer from the pleadings that the District, including its faculty,

11

staff, and administrators, had actual notice of the harassment. As a result, the plaintiff has sufficiently pled actual notice under a Title IX theory.

### b. Count 3 and 4—42 U.S.C § 1983 Claims

The next issue is whether the plaintiff sufficiently pled a section 1983 civil rights claim raised in Counts III and IV of the plaintiff's second amended complaint. As explained more fully below, for a municipal entity, such as a school district, to be liable on a civil rights claim, the violation of the plaintiff's civil rights must have been caused by a policy or custom of that municipal entity. The defendant argues that the plaintiff has failed to establish that Defendant SASD, as a municipal entity, was deliberately indifferent to the plaintiff's constitutional rights; therefore, Counts 3 and 4 should be dismissed. We disagree with the defendant.

To establish a claim under section 1983, two criteria must be met. First, the conduct complained of must have been committed by a person acting under color of state law. Second, the conduct must deprive the complainant of rights secured under the Constitution or federal law. Sameric Corp. of Del., Inc. v. City of Phila., 142 F.3d 582, 590 (3d Cir. 1998). Section 1983 does not, by its own terms, create substantive rights. Rather, it provides only remedies for deprivations of rights established elsewhere in the Constitution or federal laws. Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996).

Here, the first criteria is met as the defendant is a state actor. With regard to the second criteria, the plaintiff asserts that the defendants violated her Fourteenth Amendment rights. Specifically, the plaintiff contends that she had the right, as a minor and public-school student, to personal security and bodily integrity. Under the Due Process Clause of the Fourteenth Amendment, the plaintiff argues that she had the right to be free from invasion of her personal security and sexual harassment at the hands of public school employees. The state actor defendant who is alleged to have directly violated the plaintiff's rights is Defendant Flatley, a teacher within the plaintiff's school district.

The plaintiff seeks to hold the school responsible for the civil rights violations committed by its employee. Municipal employers, such as school districts, however, cannot be held vicariously liable for the constitutional violations committed by their employees. Monell v. NYC Dep't of Soc. Servs., 436 U.S. 658, 694 (1978). Municipal liability only attaches when a plaintiff demonstrates that an official policy or custom caused the asserted constitutional deprivation. Watson v. Abington Twp., 478 F.3d 144, 155 (3d Cir. 2007).

A policy may be established several different ways. The plaintiff indicates that in Count 3 of her second amended complaint, she seeks to establish a claim based on the polices in place at SASD that failed to prohibit fraternization between students and teachers, the use of social media between teachers and

students, nor visitation by high school students to the elementary school during school hours. In Count 4, the plaintiff seeks to establish a municipal policy based on Defendant SASD's failure to train, supervise, control, and/or discipline Defendant Flatley. We will address Counts 3 and 4 in turn.

**1. Count 3—SASD's policies**

In Count 3, the plaintiff claims that at all times relevant to the complaint, Defendant Flatley was acting, pursuant to either an official policy or the practice, custom, and usage of Defendant SASD and its school board, which did not prohibit: fraternization between students and professional staff; using social media to befriend and to communicate with students on a private basis; or, intermediate school teachers from visiting with high school students in private offices behind closed and locked doors.

Once a plaintiff identifies the "policy" at issue, as she has here, she must demonstrate causation, that is, that the municipality, through its policy, was the "'moving force behind the injury." Berg. V. Cnty. of Allegheny, 219 F.3d 261, 276 (3d Cir. 2000) (quoting Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 404 (1997)). Where the policy does not facially violate the Constitution, causation is established by demonstrating deliberate indifference to the policy's known or obvious consequences. Id. "A showing of simple or even heightened negligence will not suffice." Id. Essentially, a plaintiff must demonstrate that

14

"policymakers were aware of similar unlawful conduct in the past, but failed to take precautions against future violations, and that this failure, at least in part, led to [the] injury." Turner v. City of Phila., 22 F.Supp. 2d 434, 437 (E.D. Pa. 1998) (quoting Bielevicz v. Dubinon, 915 F.2d 845, 851 (3d Cir. 1990)).

Here, the plaintiff has pled that Superintendent Toleno "admitted that 'sexting' or inappropriate social media contact by staff with students in the district was a problem and that an assistant football coach and substitute teacher had recently been involved in similar incidents." (Id. ¶ 116). Despite this fact, the plaintiff alleges that Defendant SASD failed to implement policies prohibiting its teachers from "using social media to befriend and to communicate with students on a private basis." (Id. ¶ 113). The plaintiff has not only pled that Defendant SASD was aware that its faculty members were sexually harassing its students, but she has also pled that Defendant SASD failed to take precautions to avoid future harassment against its students, an action that the plaintiff claims amounts to deliberate indifference.

Because the plaintiff has alleged that Defendant SASD was deliberately indifferent to a known likelihood that its faculty members would violate its students' constitutional rights, and that this indifference caused the violation, Defendant SASD's motion to dismiss the plaintiff's Count III claim will be denied.

### 2. Count 4 – Failure to Train

The plaintiff seeks to establish a municipal policy under a "failure to train" theory in Count 4 of her complaint. The plaintiff argues that Defendant SASD failed to adequately instruct, train, supervise, control, and/or discipline Defendant Flatley. Defendant SASD argues that the plaintiff failed to state a claim under a municipality "failure to train theory." We disagree.

Failure to adequately screen or train municipal employees can ordinarily be considered deliberate indifference only where the failure has caused a pattern of violations." Id. (citing City of Canton, Ohio v. Harris, 489 U.S. 378, 389 (1989)). If no pattern of violations exists, the plaintiff bears a high burden to establish deliberate indifference. She must demonstrate that the violations of federal rights was a highly predictable consequence of the municipality's failure to train its employees regarding how to handle recurring situations. Id. The fact that a situation is likely to recur and the predictability that a municipal employee will violate federal rights without adequate training can reflect deliberate indifference. Id.

The Third Circuit Court of Appeals has further described failure to train municipal liability as follows: "a failure to train, discipline or control can only form the basis for section 1983 municipal liability if the plaintiff can show both contemporaneous knowledge of the offending incident or knowledge of a prior

pattern of similar incidents and circumstances under the supervisor's actions or inaction could be found to have communicated a message of approval to the offending subordinate." Montgomery v. De Simone, 159 F.3d 120, 127 (3d Cir. 1998).

As we discussed above, the plaintiff's second amended complaint sufficiently pled a claim that Defendant SASD not only was aware of prior incidents of sexual harassment, but it also failed to train and prevent its future employees, faculty, and staff from engaging in sexual harassment despite having knowledge of similar incidents of sexual harassment from the past. (Id. ¶¶ 122, 126). Accordingly, we find that the plaintiff has pled sufficient allegations to support causation based upon a failure to train policy. Thus, we find that the plaintiff's second amended complaint sufficiently alleges municipal liability against Defendant SASD to overcome its motion to dismiss.

**Conclusion**

For the reasons set forth above, we find that the plaintiff has sufficiently alleged a Title IX and § 1983 municipal liability claim. We will deny Defendant SASD's motion to dismiss Counts 1, 3, and 4 of the plaintiff's complaint.[3] An appropriate order follows.

---

[3] This analysis is relevant for purposes of deciding on a motion to dismiss. The analysis may change after the facts have been developed through discovery.

17

**Date: January 28, 2019**  **BY THE COURT:**

**s/ James M. Munley**
**JUDGE JAMES M. MUNLEY**
**United States District Court**